IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN B BRINCEFIELD, on behalf of the
Morton G. Thalhimer, Inc. Employee Stock
Ownership Plan, and derivatively on behalf
Of Morton G. Thalhimer, Inc., as Trustee of the
Steven B. Brincefield Revocable Trust,

        Plaintiff,

v.                                               Civil Action No. 3:17-cv-718-JAG

LANCE T. STUDDARD, et al.,

        Defendants,

v.

MORTON G. THALHIMER, INC.,

        Nominal Defendant.

## OPINION

Steven B. Brincefield worked for Morton G. Thalhimer, Inc. ("Thalhimer"), a large commercial real estate firm. Brincefield owns Thalhimer stock and participates in the company's Employee Stock Ownership Plan ("ESOP"). After Thalhimer's stock prices declined significantly, Brincefield brought claims under the Employment Retirement Income Security Act ("ERISA"), as well as direct and derivative state law claims, against several defendants. In broad terms, Brincefield alleges that the defendants created the ESOP for their own benefit and concealed fraudulent accounting that caused the stock prices to plummet.

All defendants moved to dismiss, and Thalhimer moved to terminate the derivative proceedings. The Court held a hearing and issued preliminary rulings on October 15, 2018. (Dk. No. 150.) This Opinion details those rulings and announces additional decisions.

1

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

Brincefield worked for Thalhimer for 38 years before retiring in 2012. He owns stock through the ESOP and Thalhimer stock directly. Although companies typically use ESOPs to encourage employee stock ownership and provide retirement benefits, Brincefield alleges that Thalhimer's directors designed the ESOP to enrich themselves. Paul F. Silver, C. Lee Warfield, III, Evan M. Magrill, David R. Dustin, Jr., and Jeffrey S. Bisger (collectively, the "Director Defendants") have served on Thalhimer's Board of Directors and the ESOP's Board of Trustees. All have held various officer positions for Thalhimer or its subsidiaries for many years. The Director Defendants appointed Lance T. Studdard as Special Trustee of the ESOP.

Brincefield alleges the defendants created the ESOP as a "Tax-Free Cash Warehouse" through a three-step process. (Am. Compl., at 14.) First, Silver and Bisger owned a controlling 77% interest in Thalhimer. In 2004, they sold 50.2% to the ESOP, but retained control as ESOP Trustees. In 2011, Silver and Bisger sold their remaining shares to the ESOP, loaning money at a high interest rate to Thalhimer to finance the transaction ("2011 Loans"). They appointed Warfield, Magrill, and Dustin as ESOP trustees. In 2016, Magrill informed Thalhimer shareholders that the ESOP would buy all remaining stock. Brincefield told Magrill that he would not sell his stock, and Magrill threatened that Thalhimer would no longer pay minimum tax distributions to shareholders after the sale. On June 20, 2016, Brincefield notified Thalhimer that the 1998 Shareholder Agreement required it to continue to pay minimum tax distributions.

On June 30, 2016, Studdard finalized the offering price and all shareholders except for Brincefield sold their stock to the ESOP for above fair market value ("2016 ESOP Transaction"). The ESOP bought the stock with a large SunTrust loan. As ESOP trustees, the Director

2

Defendants controlled the vast majority of Thalhimer stock. After the sale, Thalhimer did not pay minimum tax distributions to the ESOP or Brincefield.

In September, 2016, Brincefield demanded documents as a shareholder. Specifically, he wanted to know the value of the company and why the Director Defendants stopped making minimum distributions. Thalhimer largely refused to turn over documents because Brincefield did not request them for "proper purposes." (Am. Compl., at 25.)

In early 2017, Brincefield learned through a former Thalhimer colleague that (1) Thalhimer's stock value had plummeted; (2) the ESOP had overpaid for the stock in 2016; and (3) the Director Defendants engaged in conflicted transactions with the ESOP. In January, 2017, Dustin told Brincefield that Thalhimer expected a loss for the previous year. Brincefield made another demand for corporate records to research the loss. The documents he received revealed that the Director Defendants knew about Thalhimer's misleading financial statements in 2016. They also revealed that Silver, Bisger, Magrill, and Warfield made large, high-interest loans to Thalhimer so the company could pay the SunTrust loan from the 2016 ESOP Transaction.

On February 16, 2017, the Director Defendants explained to the shareholders who sold their stock in the 2016 ESOP Transaction that MGT Construction ("MGT"), a subsidiary of Thalhimer, had not paid millions of dollars in expenses since 2014 and had engaged in fraudulent accounting practices. They also told the former shareholders to prepare to buy their stock back from the ESOP to help make up for the losses. With Studdard's help, the Director Defendants unwound the 2016 ESOP Transaction ("2017 Unwinding"). Even with the unwinding, Thalhimer's stock price dropped millions of dollars and the ESOP beneficiaries, including Brincefield, lost retirement savings.

In addition to all of these shenanigans with the ESOP, the Director Defendants also directed many lucrative real estate investments away from Thalhimer and the ESOP to their own privately held companies. They often financed these investments with loans from Thalhimer, further decreasing Thalhimer's and the ESOP's value. Additionally, the Director Defendants forced MGT to provide services to other private companies without timely payment, exacerbating MGT's losses.

On April 19, 2017, Brincefield sent a demand letter to Thalhimer, directing the company to take action against the Director Defendants. The company appointed a new board of directors consisting of Warfield, Magrill, Christopher E. Rouzie, John L. Vincie, III, and Michael N. Mulkey. The board appointed Vincie and Mulkey to a Special Litigation Committee ("SLC") to investigate Brincefield's claims. On January 8, 2018, it came as no surprise that the SLC concluded Thalhimer should take no action in response to Brincefield's demand. The SLC directed the company to move to dismiss any derivative claims in his complaint. Brincefield alleges the SLC's review did not comply with Virginia law. On April 20, 2018, Brincefield sent a second demand letter for Thalhimer to sue accounting firm Cherry Bekaert LLP. Thalhimer responded that it intended to pursue claims against Cherry Bekaert.[1]

On October 26, 2017, Brincefield filed a complaint against the Director Defendants and Studdard. Brincefield amended the complaint on July 30, 2018, adding five new defendants who participated in the alleged breaches. The first new defendant, Cherry Bekaert, failed to identify MGT's fraud. The next, Corporate Capital Resources, LLC ("Corporate Capital"), provided consulting services to Thalhimer and the ESOP. William Gust, a lawyer for Gentry Locke and consultant for Corporate Capital, advised Thalhimer and the ESOP. Michael A. Coffey, the

---

[1] Thalhimer eventually sued Cherry Bekaert in Richmond Circuit Court on August 16, 2018.

president of Corporate Capital, provided Thalhimer and the ESOP with consulting services.[2] The final new defendant, Sheldrick, McGehee & Kohler, LLC, provided stock valuation services to the ESOP, and settled with Brincefield before the Court heard the motions to dismiss.

Brincefield brings ten counts in the amended complaint: (I) violation of ERISA § 406(a) against the Director Defendants, Studdard, Gust, Coffey, and Corporate Capital for causing the ESOP to engage in non-exempt prohibited transactions; (II) violation of ERISA § 404(a) against the Director Defendants, Studdard, Gust, Coffey, and Corporate Capital for breaching their fiduciary duties; (III) equitable relief under ERISA § 502(a)(3) for unjust enrichment against all defendants; (IV) a derivative action on behalf of Thalhimer against the Director Defendants for conversion;[3] (V) a derivative action on behalf of Thalhimer and on behalf of the ESOP against the Director Defendants[4] for statutory conspiracy; (VI) a derivative action on behalf of Thalhimer and on behalf of the ESOP against the Director Defendants for common law conspiracy; (VII) a derivative action on behalf of Thalhimer against the Director Defendants for breach of fiduciary duty; (VIII) an action by Brincefield directly and on behalf of the ESOP against Warfield, Magrill, and Dustin for breach of contract; (IX) a derivative action on behalf of Thalhimer against Cherry Bekaert for professional malpractice; and (X) an action by Brincefield directly and on behalf of the ESOP against Cherry Bekaert for professional malpractice.

---

[2] Corporate Capital's sole member is Gentry Locke. Gentry Locke previously represented the Director Defendants, but because the amended complaint names Corporate Capital, Gust, and Coffey as defendants, the Court allowed Gentry Locke to withdraw as counsel. (Dk. No. 62.)
[3] Although the Director Defendants briefly mention Count IV in their motion to dismiss, the Court confirmed at the hearing that no defendants moved to dismiss this count. In any event, because Count IV brings a derivative claim, the Court will consider it when deciding Thalhimer's motion to terminate derivative proceedings.
[4] Brincefield's counsel indicated at the hearing that, contrary to the amended complaint, Counts V and VI only pertain to the Director Defendants.

5

## II. DISCUSSION

### *A. Thalhimer's Motion to Terminate Derivative Proceedings*

Federal Rule of Civil Procedure 23.1(c) does not set forth a standard of review for motions to terminate derivative proceedings. Because the motion to terminate requires the Court to consider information outside of the complaint, the Court will apply the Rule 56 summary judgment standard. *See Luzak v. Light*, No. 1:15-cv-501, 2016 WL 3854118, at *2 (E.D. Va. July 8, 2016), *aff'd*, 678 F. App'x 180 (4th Cir. 2017) (applying the summary judgment standard to a motion to dismiss derivative proceedings).

*Luzak* also set forth requirements for terminating derivative proceedings filed after an SLC rejects a shareholder demand. Courts must decide whether the SLC "acted properly in concluding that litigating [] derivative claims was not in the best interests of the Company," pursuant to the Virginia Stock Corporation Act. *Luzak*, 2016 WL 3854118, at *3 (citing Va. Code Ann. § 13.1-672.4). To avoid dismissal, a plaintiff must show one of the following:

> (1) that a majority of "disinterested" directors did not appoint the SLC members; (2) that the SLC members themselves were not "disinterested"; (3) that the SLC did not conduct a review and evaluation, "adequately informed in the circumstances, of the allegations made in the complaint"; (4) that the SLC did not determine that maintenance of the derivative claims was not in the best interests of the Company; (5) that the SLC's determination was not made in good faith; [or] (6) that the SLC did not submit a "short and concise" statement in support of its decision.

*Id.* The Court, however, cannot make the determinations that Virginia law requires on the existing record. Thus, as in *Luzak*, Brincefield may pursue discovery before the Court rules on the motion. 2016 WL 3854118, at *2. The Court will decide the extent of discovery after reviewing the parties' briefing. Accordingly, the Court defers deciding the motion to terminate.

6

## B. Standing[5]

To sue in federal court, a plaintiff must establish Article III standing by showing a "'concrete and particularized' injury that is fairly traceable to the challenged conduct of the defendant and is likely to be redressed by a favorable judicial decision." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An ERISA plaintiff alleges an injury when he pleads a loss to a plan's assets due to declining stock prices. *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 74-76 (E.D. Va. 2006). Specifically, a plaintiff's claim that his "retirement accounts [are] worth less than they would have been absent the breach of duty" supports Article III standing. *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008).

Studdard argues that Brincefield has not alleged a loss traceable to his conduct.[6] The amended complaint, however, sufficiently alleges a loss to the ESOP and Brincefield's interest in the ESOP. *See DiFelice*, 235 F.R.D. at 76. Brincefield claims that the 2017 Unwinding did not make the ESOP whole, and the plan incurred costs and fees in the process. Brincefield also pleads facts about Studdard's involvement in the 2016 ESOP Transaction and the 2017 Unwinding. Thus, Brincefield sufficiently alleges a loss attributable to Studdard.

---

[5] A motion to dismiss for lack of standing pertains to the Court's subject matter jurisdiction under Rule 12(b)(1). *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). The plaintiff bears the burden of proving proper subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

[6] Gust also moved to dismiss on standing grounds. Because the Court disposes of all claims against Gust pursuant to Rule 12(b)(6), it will not address Gust's standing argument.

## C. Rule 12(b)(6) Motions to Dismiss[7]

### 1. *Count I: Violation of ERISA § 406(a) for Non-Exempt Prohibited Transactions*
*(Director Defendants, Studdard, Gust, Coffey, Corporate Capital)*

In a suit based on ERISA violations, the Court first must decide if each defendant meets the statutory definition of a fiduciary. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60-61 (4th Cir. 1992). On a motion to dismiss, "the threshold question is whether the plaintiff sufficiently alleges that [the defendant] was a fiduciary" under ERISA. *Paasch v. Nat'l Rural Elec. Coop. Ass'n*, 177 F. Supp. 3d 930, 936 (E.D. Va. 2016). By definition:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Courts must consider whether the defendant acted as a fiduciary for the "particular activity at issue." *Coleman*, 969 F.2d at 61.

Brincefield has not pled facts showing that Gust, Coffey, and Corporate Capital exercised the kind of discretion or control necessary to qualify as ERISA fiduciaries for the alleged prohibited transactions. *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 2005) (affirming dismissal when complaint failed to show that the defendant "transcended his role as legal

---

[7] Rule 12(b)(6) gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

8

counsel"); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 320 n.3 (2d Cir. 2003) ("[A]ctuaries, attorneys, and accountants are not ordinarily fiduciaries unless they render investment advice or are given special authority over plan management."). The Court dismisses Count I against those defendants. In contrast, Brincefield pleads facts showing that the Director Defendants and Studdard had discretionary control and drove the process culminating in the 2016 ESOP Transaction and 2017 Unwinding. Brincefield also alleges that certain Director Defendants made loans to the ESOP in 2016 while exercising control over the ESOP. Accordingly, Brincefield has established the Director Defendants' and Studdard's fiduciary status.

ERISA § 406 prohibits certain conflicted or self-interested transactions. 29 U.S.C. § 1106. ERISA requires courts first to ask whether § 406 prohibits the transaction, then determine whether § 408 authorizes the transaction through one of its exemptions. *Brundle v. Wilmington Tr., N.A.*, No. 1:15-cv-1494, 2016 WL 6542718, at *10 (E.D. Va. Nov. 3, 2016). Brincefield sufficiently alleges that the Director Defendants and Studdard, acting as fiduciaries, engaged in ERISA prohibited transactions. The issue of whether any § 408 exemptions apply is not appropriate at this stage. *See id.* (making such determinations on summary judgment).

The claims about the 2011 Loans from Silver and Bisger, however, will not go forward. ERISA creates a six-year statute of limitations from "the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A). For a loan, the "last action" occurs when loan funds are disbursed. *Davidson v. Cook*, 567 F. Supp. 225, 234 (E.D. Va. 1983). The funds for the 2011 Loans were disbursed on September 26 and 28, 2011. (Dk. No. 163-2, at 18-19.)[8] Brincefield filed this action on October 26, 2017. Thus, the statute of limitations bars

---

[8] Pursuant to the Court's Order, the Director Defendants filed all documents related to the 2011 Loans. On a motion to dismiss, the Court may consider documents outside the complaint if they

9

Count I as it pertains to the 2011 Loans. The remainder of Count I will proceed against the Director Defendants and Studdard.

### 2. *Count II: Violation of ERISA § 404(a) for Breach of Fiduciary Duties*
*(Director Defendants, Studdard, Gust, Coffey, Corporate Capital)*

Brincefield fails to state facts indicating that Gust, Coffey, and Corporate Capital acted as fiduciaries regarding the alleged breaches, so Count II fails as to them. As for the other defendants, ERISA "imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014). Fiduciaries owe duties of loyalty and prudence to the plan. *Id.* at 356. A plan fiduciary who breaches his duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). Thus, a "fiduciary can only be held liable upon a finding that the breach actually caused a loss to the plan." *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011). Here, Brincefield alleges that the Director Defendants and Studdard, acting as fiduciaries, breached their duties, and that those breaches caused a loss to the ESOP. Count II will proceed as to the Director Defendants and Studdard.[9]

### 3. *Count III: Equitable Relief Under ERISA § 502(a)(3) for Unjust Enrichment*
*(All Defendants)*

ERISA § 502(a)(3) permits courts to "enjoin any act or practice which violates [ERISA]" or to grant "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Equitable relief "is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006). A plaintiff

---

are integral to the complaint and authentic. *Leichling v. Honeywell, Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

[9] Any claims pertaining to the 2011 Loans in Count II are time barred. (Dk. No. 163, at 3.)

must show (1) the defendant was a fiduciary of the plan; (2) the defendant breached his fiduciary duty; and (3) the plaintiff needs injunctive or other equitable relief to remedy the breach. *Estate of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 747 (W.D. Va. 2008).

The amended complaint establishes that the Director Defendants and Studdard acted in fiduciary capacities, but fails to establish fiduciary status as to all other defendants.[10] Brincefield has pled the Director Defendants and Studdard breached their fiduciary duties. As for the third element, *Korotynska* and its progeny provide little guidance, as they prohibit § 502(a)(3) relief when plaintiffs repackage denial of benefits claims as equitable claims. *See* 474 F.3d at 106. Brincefield's case does not involve denial of benefits. Although the Court remains uncertain about whether this case requires equitable relief, the Court allows Count III to proceed as to the Director Defendants and Studdard. The Court stays this count pending resolution of the other ERISA claims to determine the necessity of equitable relief.

### 4. *Counts V and VI: Derivative Action on Behalf of Thalhimer and on Behalf of the ESOP for Statutory and Common Law Conspiracy*
*(Director Defendants)*

Intracorporate immunity bars conspiracy claims when a plaintiff alleges that corporate employees conspire with each other or with the corporation. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). In other words, "a single entity cannot conspire with itself." *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996). Intracorporate immunity bars the conspiracy claims that Brincefield brings on behalf of

---

[10] The Court rejects the notion that it can hold non-fiduciaries liable under a "knowing participation" theory. The Fourth Circuit recently noted the "questionable validity" of liability based on participation in others' breaches of their fiduciary duties. *Gordon v. CIGNA Corp.*, 890 F.3d 463, 477 n.2 (4th Cir. 2018). In the prohibited transaction context, the participation theory requires much more than the complaint alleges about the non-fiduciaries in this case. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 243, 245 (2000) (finding a cause of action where non-fiduciaries sold worthless assets to the plan).

Thalhimer. Brincefield alleges that the defendants acted as agents of Thalhimer. As a matter of law, "acts of corporate agents are acts of the corporation itself," and no exception to this rule applies here. *ePlus Tech.*, 313 F.3d at 179.

Turning to Brincefield's ESOP claim, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Congress intended a "comprehensive civil enforcement scheme," providing exclusive remedies. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Courts should look to Congress' intent when deciding a preemption issue. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with [] clear congressional intent." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (discussing ERISA's preemptive force in the jurisdictional context). When a state law claim "only tangentially relates to an ERISA plan," however, ERISA does not preempt it. *Greenbrier Hotel Corp. v. Unite Here Health*, 719 F. App'x 168, 180 (4th Cir. 2018).

ERISA preempts conspiracy claims related to an ESOP, which is "undeniably an ERISA-covered employee benefit plan." *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 863 (4th Cir. 1994). Brincefield attempts to "repackage" his ERISA fiduciary duty claims as conspiracy allegations on behalf of the ESOP. *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 344 (4th Cir. 2007). These claims, however, "overlap with ERISA's remedial scheme, which contemplates ... claims brought by plan participants[ and] beneficiaries." *Greenbrier*, 719 F. App'x at 180. Brincefield argues that Virginia conspiracy is a "generally applicable criminal law," which ERISA excepts from preemption. 29 U.S.C. § 1144(b)(4). Brincefield's case,

however, "is a civil action, not a criminal prosecution (as contemplated by the ERISA exception)." *Altshuler v. Animal Hosps., Ltd.*, 901 F. Supp. 2d 269, 279 n.16 (D. Mass. 2012).

Accordingly, ERISA preempts Brincefield's conspiracy claims on behalf of the ESOP, and intracorporate immunity bars Brincefield's conspiracy claims on behalf of Thalhimer. The Court dismisses Counts V and VI as to all defendants.

### 5. *Count VII: Derivative Action on Behalf of Thalhimer for Breach of Fiduciary Duty (Director Defendants)*

The Director Defendants moved to dismiss Count VII for the reasons in Thalhimer's motion to terminate. The Court denies the motion to dismiss Count VII at this time, and will decide if this count goes forward when ruling on the motion to terminate.

### 6. *Count VIII: Action by Brincefield Directly and on Behalf of the ESOP for Breach of Contract (Warfield, Magrill, Dustin)*

ERISA preempts Brincefield's breach of contract claim on behalf of the ESOP. *See Wilmington Shipping Co.*, 496 F.3d at 343-44 (finding ERISA preempted a breach of contract claim that the court deemed "near the heartland of ERISA's coverage"). Although "general contract law falls within the field of law traditionally occupied by the States," Brincefield alleges that the ESOP trustees' breaches damaged the ESOP and its beneficiaries. *Greenbrier*, 719 F. App'x at 179. This contract claim involves "relationships regulated by ERISA," and more than "tangentially relates to an ERISA plan." *Id.* at 180.

Brincefield's direct breach of contract count, however, involves an "ordinary contractual relationship," with no evidence Congress intended to supplant it. *Id.* The defendants make arguments concerning whether the 1998 Stockholder Agreement applies to Brincefield's claims. The Court declines to delve into contract interpretation on a motion to dismiss, and foresees

revisiting this claim on summary judgment.[11] *See W. Ref. Yorktown, Inc. v. BP Corp. N. Am., Inc.*, 618 F. Supp. 2d 513, 523 (E.D. Va. 2009). Thus, the Court dismisses Count VIII on behalf of the ESOP, but Brincefield's direct claim will survive.

### 7. *Count IX: Derivative Action on Behalf of Thalhimer for Professional Malpractice* (Cherry Bekaert)

A corporation's directors have "complete discretion to prosecute the corporation's causes of action." *In re Fed. Home Loan Mtg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 794-95 (E.D. Va. 2009). A shareholder wishing to initiate litigation must first make a reasonable demand on the board of directors. *Id.* at 795. If the board refuses the demand, or the shareholder demonstrates that a demand would be futile, the shareholder may pursue a derivative claim. *Id.* If the board chooses to pursue the claim, however, "it alone has standing to do so." *Id.* In this case, Thalhimer's board has elected to pursue claims against Cherry Bekaert, so Brincefield cannot bring those claims himself. The Court dismisses Count IX.

### 8. *Count X: Action by Brincefield Directly and on Behalf of the ESOP for Professional Malpractice* (Cherry Bekaert)

Although professional malpractice claims sound in tort, they "are actions for breach of contract." *Hirschler v. GMD Invs. Ltd. P'ship*, No. 90-1289, 1991 WL 115773, a *9 (E.D. Va. Mar. 28, 1991). A plaintiff must demonstrate a contractual relationship giving rise to a duty, a breach of that duty, causation, and damages. *Shipman v. Kruck*, 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004).

A non-party to a contract can bring an accounting malpractice claim by showing that he is a third party beneficiary to the contract, meaning the parties to the contract "clearly and

---

[11] The Court has allowed the parties to file multiple partial summary judgment motions (one on each issue) by March 7, 2019. (Dk. No. 151.)

14

definitely intended [the contract] to confer a benefit upon him." *Bank of Am. v. Musselman*, 240 F. Supp. 2d 547, 553-54 (E.D. Va. 2003). The non-party must demonstrate the contracting parties' "overriding intent" to benefit him. *Id.* at 554. Here, Brincefield fails to plead that Thalhimer and Cherry Bekaert "clearly and definitely" intended him as a third party beneficiary to their contract.[12] *Id.* Additionally, no law supports Brincefield's assertion that he can bring a non-ERISA claim derivatively against a non-fiduciary on behalf of the ESOP. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09MD2017, 2012 WL 6013012, at *2 (S.D.N.Y. Dec. 3, 2012) (finding no cases allowing this type of claim). Accordingly, the Court dismisses Count X.

## III. CONCLUSION

For these reasons, the Court grants Cherry Bekaert's, Coffey's, Corporate Capital's, and Gust's motions to dismiss. The Court grants Studdard's motion as to Counts V and VI, but denies it as to all other claims. Finally, the Court grants the Director Defendants' motion in part. Specifically, the Court dismisses Counts V and VI; Counts I and II as they pertain to the 2011 Loans; and Count VIII on behalf of the ESOP. The Court denies the Director Defendants' motion to dismiss all other claims.

The Court defers ruling on Thalhimer's motion to terminate while the parties complete limited discovery, and denies as moot Thalhimer's motion to dismiss based on the Court's other rulings.

Finally, the Court stays Count III pending resolution of Counts I and II to determine if this case requires equitable relief.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

---

[12] The ERISA provision Brincefield cites does not establish the parties' "overriding intent" to benefit Brincefield through their accounting contract. *Musselman*, 240 F. Supp. 2d at 554.

15

Date: <u>4 Dec. 2018</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge